UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ARMSTRONG, | No. 2:25-cv-0904 SCR P |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF PLUMAS, et al., | |
| Defendants. | |

Plaintiff is incarcerated in Plumas County Jail and proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff's complaint is before the undersigned for screening under 28 U.S.C. § 1915A. (ECF No. 1.) Plaintiff has also filed a motion to proceed in forma pauperis (ECF No. 2) and motions for the appointment of counsel (ECF Nos. 3, 7).

**IN FORMA PAUPERIS**

Plaintiff requests leave to proceed without paying the full filing fee for this action, under 28 U.S.C. § 1915. (ECF No. 2.) Plaintiff submitted a declaration showing that he cannot afford to pay the entire filing fee. See 28 U.S.C. § 1915(a)(2). Accordingly, plaintiff's motion to proceed in forma pauperis is granted. This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that are taken from the inmate's trust account rather than in one lump sum. 28 U.S.C. §§ 1914(a). As part of this order, the prison is required to remove an initial partial filing fee from plaintiff's trust account. See 28 U.S.C. § 1915(b)(1). A separate order

1

directed to the Sheriff of Plumas County requires monthly payments of twenty percent of the prior month's income to be taken from plaintiff's trust account. These payments will be taken until the $350 filing fee is paid in full. See 28 U.S.C. § 1915(b)(2).

## STATUTORY SCREENING OF PRISONER COMPLAINTS

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## PLAINTIFF'S COMPLAINT

**I.   Defendants**

The complaint names nine defendants: (1) Plumas County; (2) Deputy Andrew Courtright,

Plumas County Sheriff's Dept.; (3) Detective John Fatheree, Plumas County Sheriff's Dept.; (4) Morgan Dillard, Plumas County Probation Dept.; (5) C/O Rachel Fatheree, Plumas County Jail; (6) C/O Brandvold, Plumas County Jail; (7) C/O Julia Frazier, Plumas County Jail; (8) Sgt. Kalid Forcino, Plumas County Jail; and (9) Steve Clark, Commander.  (ECF No. 1 at 1-2.)

## II. Causes of Action

### 1) Disciplinary Proceedings

Plaintiff was arrested on December 31, 2024, and placed in protective custody.  (ECF No. 1 at 11.)  Plaintiff alleges defendant Clark refused to change plaintiff's race from Black to nonbinary and defendant John Fatheree never brought plaintiff in for an intake interview.  (Id.)  Plaintiff filed a citizen's complaint against defendants Clark and John Fatheree.  (Id.)  He faced retaliation as a result.  He received six writeups in a week and was put on a 60-day lockdown on January 30, 2025.  (Id.)  Plaintiff filed the complaint on March 12, 2025.  (Id. at 1.)  In his time on lockdown, plaintiff has not been reviewed by medical and only receives fifteen minutes of outside yard every other day.  He has no access to the phone, the library, or commissary.  (Id. at 4.)

### 2) Property

Plaintiff alleges defendant John Fatherlee seized three cell phones from plaintiff's jail cell on January 8, 2025, without producing a receipt or warrant.  (ECF No. 1 at 6.)  On February 18, 2025, defendant Brandvold took plaintiff's Hell's Angels sticker that his lawyer sent him via legal mail.  Plaintiff alleges Brandvold's action was in response to a complaint.  (Id.)  Plaintiff also challenges the conditions of his PRCS [Post Release Community Supervision].  (Id. at 12.)  He is subject to 36 conditions, including drug terms when he has no drug charges.  Other conditions are contradictory.  The phones were seized under a fictitious term.  (Id.)

### 3) Basic Necessities

Defendant Forcino was supposed to bring plaintiff cleaning supplies for his cell but didn't.  (ECF No. 1 at 7.)  The cell has not been cleaned in seven days.  (Id.)  Plaintiff's heater has been broken since February 15, 2025, and he got sick from the "freezing cell."  He has no jacket and or extra blankets.  (Id.)  Plaintiff's utensils have not been exchanged in 3 weeks or more.  The Jail refuses to give him extra blankets because of his writeup.  (Id.)  Plaintiff has requested cleaning

supplies for his cell but never received any. (Id.) Plaintiff claims the facility is in violation of Cal. Code Regs., tit. 15, § 3050 because it is not providing two hot meals a day.[1] Nor is a "wide variety" of food being served. (Id. at 5.)

### 4) Legal Mail

On February 13, 2025, "Defendants" opened plaintiff's outgoing legal mail. (ECF No. 1 at 8.) On January 29, 2025, defendants took legal paperwork and searched it out of plaintiff's presence. (Id.)

### 5) Excessive Force

On January 30, 2025, defendant Courtright arrested plaintiff and put the handcuffs on so tight plaintiff received a permanent scar. (ECF No. 1 at 9.) Plaintiff also claims to have tendon damage. (Id.)

### III.   Requested Relief

Plaintiff seeks damages in the amount of $1 million dollars. (ECF No. 1 at 13.)

## LEGAL STANDARDS

### I.   42 U.S.C. § 1983

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

### II.   Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's

---

[1] Per § 3050(a)(2), "[i]ncarcerated persons shall be provided three meals each day, two of which shall be served hot."

"personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted). In other words, "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

## DISCUSSION

Plaintiff's complaint is difficult to follow and illegible at times. As explained below, even liberally construed, the complaint fails to state cognizable claims. Plaintiff will be given to leave to amend and provided with the relevant standards for his substantive claims.

### I.    First Amendment Retaliation

The undersigned construes plaintiff's first, "disciplinary proceedings" claim as alleging First Amendment retaliation against defendants Clark and John Fatheree. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted). Filing an inmate grievance is a protected action under the First Amendment. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

The complaint plausibility alleges plaintiff was written up and placed in lockdown for engaging in protected conduct. However, plaintiff has not alleged any state actor's personal participation in the alleged retaliatory acts. It is not clear who retaliated against plaintiff or whether they were aware of his citizens complaint against Clark and Fatheree. For this reason, plaintiff has not stated a cognizable retaliation claim. See Castaneda v. CDCR, 2018 WL

11474352, at *4 (E.D. Cal. Jan. 23, 2018) (screening out retaliation claim where complaint did not allege that the defendants responsible for adverse transfer were aware of plaintiff's protected activities); Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."). Plaintiff will be given an opportunity to amend his retaliation claim. If plaintiff chooses to amend, he must explain who retaliated against him and allege facts connecting their retaliatory acts to his complaint.

## II.     Fourth Amendment Search and Seizure

Plaintiff claims his property was seized without a warrant in violation of the Fourth Amendment. (ECF No. 1 at 6.) While Plaintiff states that this occurred in jail, he also suggests it occurred when he was arrested. Typically, the Fourth Amendment protects individuals "against unreasonable searches and seizures ... [without] probable cause." U.S. Const. amend. IV. But plaintiff alleges he was on PRCS (id. at 12), which requires a Fourth Amendment waiver to participate. See Cal. Penal Code § 3465 ("Every person placed on [PRCS], and his or her residence and possessions, shall be subject to search or seizure at any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer); Jimenez v. City of Sacramento, No. 2:22-CV-2004 DJC CSK, 2025 WL 1344371, at *3 (E.D. Cal. May 8, 2025) ("[F]ormerly incarcerated individuals who participate in California's PRCS program are subject to search or seizure without warrant."). Because plaintiff appears to have waived his Fourth Amendment protections, he has not stated a cognizable claim regarding the seizure of his property that might have occurred during his arrest.

Moreover, to the extent that Plaintiff's phones were seized from his jail cell, he has not pleaded facts showing he maintained an expectation of privacy in those phones such that a warrant was required. "[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). Plaintiff has not alleged whether and to what extent the cell phones contained information for which he might retain an expectation of privacy while in custody (for example, confidential attorney-client communications) or the reason for the seizure of those phones. As a result, plaintiff has not stated a cognizable claim regarding the seizure of his property that might

have occurred in jail.

### III. Eighth Amendment Conditions of Confinement

Plaintiff's "basic necessities" claim challenges the conditions of his confinement under the Fourteenth Amendment. (ECF No. 1 at 7.) Because plaintiff was arrested for violating terms of his PRCS terms (ECF No. 1 at 12), the court instead applies the Eighth Amendment. See Flores v. Cty. of Fresno, No. 1:19-cv-1477 DAD BAM, 2020 WL 4339825, at *3 n.3 (E.D. Cal. July 28, 2020) (Eighth Amendment provided the proper conditions of confinement standard where plaintiff alleged she was incarcerated in county jail for parole violation) (citations omitted)); United States v. Miller, 694 Fed. App'x. 609, 610 (9th Cir. 2017) ("California appellate courts have likened PRCS to parole.").

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. Johnson v. Lewis, 217 F. 3d 726, 731 (9th Cir. 2000). To succeed on an Eighth Amendment conditions of confinement claim, plaintiff must show that (1) the defendant jail official's conduct deprived him of the minimal civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

**A. Cleanliness**

"[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995). "Usually, a more offensive condition will be of constitutional significance when it exists for even a short time, while a less offensive condition will be of constitutional significance only when it has existed for a much longer time." Cockcroft v. Kirkland, 548 F. Supp. 2d 767, 775 (N.D. Cal. 2008) (denying motion to dismiss Eighth Amendment claim where plaintiff alleged he endured backflushing toilets for two years and officials refused to provide adequate supplies and tools to sanitize in response); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) ("The more basic the need, the shorter the time it can be withheld." (quoting Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982))).

Here, plaintiff alleges his cell has not been cleaned in seven days and defendant Forcino

1  has not brought him supplies.  In addition, jail officials have not exchanged his utensils or bowl
2  for three weeks.  Severe or prolonged conditions of this type can give rise to an Eighth
3  Amendment claim.  See Antonetti v. Skolnik, 748 F. Supp. 2d 1201, 1211 (D. Nev. 2010)
4  (screening in Eighth Amendment claim where plaintiff was "regularly deprived" of toilet paper
5  and soap and his housing unit was "filthy and littered with food and urine.")  But given the short
6  duration of the conditions in his cell, plaintiff has not plead enough factual detail to support an
7  inference that the conditions were offensive enough to support a constitutional violation.
8      Moreover, to satisfy the second prong of the Eighth Amendment analysis, plaintiff must
9  allege facts sufficient to support a claim that jail officials knew of and disregarded a substantial
10 risk of serious harm.  Farmer, 511 U.S. at 834, 847.  Plaintiff does not allege facts regarding any
11 defendant's, including Forcino's, knowledge of the conditions in his cell.  Thus, plaintiff has not
12 stated an Eighth Amendment claim regarding the cleanliness of his cell.  Plaintiff will be given an
13 opportunity to amend to develop facts regarding the conditions in his cell and plead a defendant's
14 subjective deliberate indifference to those conditions.

**B. Temperature**

16     "The Eighth Amendment guarantees adequate heating."  Keenan v. Hall, 83 F.3d 1083,
17 1091 (9th Cir. 1996) (citation omitted).  "One measure of an inadequate, as opposed to merely
18 uncomfortable, temperature is that it poses 'a substantial risk of serious harm.'"  Graves v.
19 Arpaio, 623 F.3d 1043, 1049 (9th Cir. 2010) (per curiam) (quoting Farmer, 511 U.S. at 834).
20     Plaintiff claims his cell is "freezing" and that he became sick as a result.  Even assuming
21 this condition is "sufficiently serious" for Eighth Amendment purposes, plaintiff again has not
22 alleged any defendants' deliberate indifference to his health or safety.  Farmer, 511 U.S. at 834.
23 Accordingly, plaintiff has not stated an Eighth Amendment claim regarding cell temperature.

**C. Food**

25     Plaintiff's final conditions claim concerns meals, namely that the jail is not providing a
26 wide variety of food or two hot meals a day as required by Cal. Code Regs., tit. 15, § 3050.  "The
27 Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it
28 need not be tasty or aesthetically pleasing."  LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir.

1993). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. (citation and internal quotation marks omitted).

Even assuming the jail is out of compliance with § 3050, the complaint does not adequately allege that the meals are inadequate to maintain health. Plaintiff's allegations that the food lacks nutrition are conclusory and he does not allege that the meals have adversely affected his health. See Foster v. Runnels, 554 F.3d 807, 813 (9th Cir. 2009) (reversing grant of summary judgment to defendant on inadequate food claim where plaintiff alleged he lost weight and suffered headaches and dizziness due to inadequate nutrition). Moreover, plaintiff again does not allege any defendants' deliberate indifference regarding prison meals. For these reasons, plaintiff has not stated an Eighth Amendment claim regarding the jail's meals.

Plaintiff will be given leave to amend his Eighth Amendment claims and is advised to consider the authorities provided above regarding the basic necessities at issue in his complaint.

### IV. First Amendment Access to Legal Mail

Plaintiff alleges defendants opened his outgoing legal mail and searched his legal paperwork in violation of the Fourth Amendment. (ECF No. 1 at 8.) "[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson, 468 U.S. at 526. Instead, the undersigned construes this claim as alleging a violation of his First Amendment rights concerning legal mail.

Under the First Amendment, prisoners have a right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Courts have afforded greater protection to legal mail than non-legal mail. See Thornburgh v. Abbott, 490 U.S. 401, 412 (1989)). In the Ninth Circuit, prisoners have a "protected First Amendment interest in having properly marked, confidential legal mail opened only in their presence." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017). However, only mail from plaintiff's lawyer or prospective lawyer is protected. See Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014) (describing the right at issue as the right to be free from "prison officials reading mail between a prisoner and his lawyer"); Keenan, 83 F.3d at 1094 ("mail from the courts, as contrasted with mail from a

9

1  prisoner's lawyer, is not legal mail"). As to communication with counsel, a plaintiff need not
2  "'show any actual injury beyond the free speech violation itself to state a constitutional claim.'"
3  Hayes, 849 F.3d at 1212 (quoting Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008)).

4      Plaintiff does not name the state actor who interfered with his mail, instead attributing it to
5  "Defendants." Plaintiff will be given leave to amend to fix these issues. The court recognizes
6  that it is difficult to identify the defendant responsible when the alleged mail interference does not
7  occur in plaintiff's presence. Plaintiff is advised to plead facts, to the best of his abilities, that
8  support reasonable inferences of a person's interference with his legal mail. Plaintiff is also
9  advised that to prove a violation regarding legal mail, he must also "clarify who sent the mail or
10  whether it was properly marked as 'legal mail.'" Hayes, 849 F.3d at 1211.

11      **V.**    **Excessive Force**

12      Plaintiff's final claim alleges defendant Courtright's application of tight handcuffs
13  constituted excessive force in violation of the Eighth Amendment. (ECF No. 1 at 9.)

14      The Eighth Amendment prohibits prison officials from inflicting cruel and unusual
15  punishment on inmates which, in excessive force cases, has been defined as "the unnecessary and
16  wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison
17  officials stand accused of using excessive physical force … the core judicial inquiry is … whether
18  force was applied in a good-faith effort to maintain or restore discipline, or maliciously and
19  sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992). The Ninth Circuit
20  applies a five-factor test to determine whether the use of force was malicious and sadistic: (1) the
21  extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship
22  between that need and the amount of force used; (4) the threat reasonably perceived by the
23  responsible officials; and (5) any efforts made to temper the severity of the forceful response."
24  Hughes v. Rodriguez, 31 F.4th 1211, 1221 (9th Cir. 2022) (citation omitted).

25      It is well-established that overly tight handcuffing can constitute excessive force. Wall v.
26  Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004). However, here, even accepting as true
27  plaintiff's assertion that the handcuffing caused a permanent scar and tendon damage, there are
28  insufficient facts to show that Courtright's use of force was malicious or sadistic. "In general, in

cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant." Reviere v. Phillips, No. 1:11-CV-0483 AWI DLB PC, 2014 WL 711002, at *6 (E.D. Cal. Feb. 21, 2014) (collecting cases).  Because there are no facts from which to infer Courtright's malicious or sadistic intent, plaintiff's complaint fails to state an Eighth Amendment excessive force claim.

Plaintiff will be given leave to amend this claim as well.  If plaintiff chooses to amend, he must provide additional context for the incident, such as facts on the extent of his injuries and any other circumstances that would suggest defendant tightened the handcuffs with intent to cause plaintiff unnecessary pain.

**LEAVE TO AMEND**

Having conducted the screening required by 28 U.S.C. § 1915A, the court finds that the complaint does not state any cognizable § 1983 claims.  Because of the defects identified above, the court will not order the complaint to be served on defendants.  However, plaintiff may try to fix these problems by filing an amended complaint.  In deciding whether to file an amended complaint, plaintiff is encouraged to review the relevant legal standards governing his potential claims for relief that the undersigned has laid out above.

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights.  Rizzo, 423 U.S. at 370-71.  The complaint must also allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson, 588 F.2d at 743.  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court will not refer to a prior pleading in order to make his amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an

amended complaint supersedes any prior complaints. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted). Once plaintiff files an amended complaint, any previous complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

## MOTIONS FOR THE APPOINTMENT OF COUNSEL

Plaintiff filed two motions for the appointment of the counsel under 28 U.S.C. § 1915(e). (ECF Nos. 3, 7.) In the first motion, plaintiff states that he is unable to afford counsel. (ECF No. 3 at 1.) He adds that the issues in his case are complex and will require significant research and investigation, yet he has limited law library access and knowledge of the law. (Id.) Plaintiff has asked prison officials to provide him a list of attorneys, but they declined to assist. (Id. at 1-2.) In his second motion, plaintiff repeats the reasons in his first motion and attaches a letter from an attorney declining to take on plaintiff's case. (ECF No. 7 at 1-2.)

District courts lack authority under 28 U.S.C. § 1915 to require counsel to represent indigent prisoners in section 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In exceptional circumstances, the court may request that an attorney voluntarily represent such a plaintiff. See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. Wood, 900 F.2d at 1335; Riley v. Franke, 340 F. Supp. 3d 783, 787 (E.D. Wis. 2018).

Beyond § 1915(e)(1), other sources of law may implicate a request for counsel. For example, appointed counsel may be required in a civil proceeding as an accommodation for a litigant who is disabled. See Franco-Gonzalez v. Holder, No. 10-cv-2211 DMG (DTBx), 2013 WL 3674492, at *3-*9 (C.D. Cal. Apr. 23, 2013) (granting summary judgment to class of

mentally disabled individuals in civil immigration proceedings on their request for appointed representatives under the Rehabilitation Act). Due process may also require appointment of counsel in certain proceedings. See Turner v. Rogers, 564 U.S. 431, 444-45 (2011) (analyzing request for appointment of counsel in civil proceeding under the Mathews v. Eldridge, 424 U.S. 319 (1976), procedural due process framework).

Here, plaintiff has failed to establish exceptional circumstances warranting the appointment of counsel under 28 U.S.C. § 1915(e). Plaintiff's indigency, imprisonment, limited library access, and limited legal knowledge are all circumstances common to most incarcerated persons. Further, as explained in the screening order above, plaintiff has yet to establish any likelihood of success on the merits. Nor are his claims so complex that he cannot prosecute his case pro se, particularly at this early stage of the proceedings. Accordingly, plaintiff's motions for appointment of counsel are denied without prejudice.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

3. Plaintiff's motions for appointment of counsel (ECF Nos. 3, 7) are DENIED without prejudice.

4. Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

5. Within thirty (30) days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of 42 U.S.C. § 1983, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned this case, **2:25-cv-0904 SCR P**, and must be labeled **"First Amended Complaint."**

6. Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

7. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

DATED: August 27, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE